CARTER LEDYARD & MILBURN LLP
William F. Sondericker (NY State Bar No. 1571439)
Sondericker@clm.com
Keith D. Nowak (NY State Bar No. 1628825)
Nowak@clm.com
2 Wall Street
New York, New York 10005
Telephone:  (212) 732-3200
Facsimile:   (212) 732-3232

GREENBERG, WHITCOMBE & TAKEUCHI, LLP
Derrick K. Takeuchi (CA Bar No. 97878)
dtakeuchi@gwtllp.com
21515 Hawthorne Boulevard, Suite 450
Torrance, California 90503
Telephone: (310) 540-2000
Facsimile: (310) 540-6609

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| ISTA PHARMACEUTICALS, INC., <br><br> Plaintiff, <br><br> v. <br><br> SENJU PHARMACEUTICAL CO., LTD., <br><br> Defendant. | Case No. CV10-3219 GW (JEM) <br><br> **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR TO STAY THE ACTION PENDING ARBITRATION** |

**PRELIMINARY STATEMENT**

Defendant Senju Pharmaceutical Co., Ltd. ("Senju"), by its attorneys Carter Ledyard & Milburn LLP, respectfully submits this memorandum of law in support of its motion to dismiss the First Amended Complaint (the "Complaint")[1] of plaintiff ISTA

---

[1] A copy of the Complaint is attached to the Affidavit of Shuji Matsumura dated July 8, 2010 ("Matsumura Affidavit") as Exhibit A.

-1-

Pharmaceuticals, Inc. ("ISTA") pursuant to Fed. R. Civ. P. 12(b)(1) and (6), or, alternatively, for a stay of this action pursuant to section 3 of the Federal Arbitration Act pending arbitration in Japan. ISTA has initiated this action in violation of an agreement to arbitrate "all disputes" between the parties before the International Chamber of Commerce ("ICC") in Japan.

## STATEMENT OF FACTS

**A.  ISTA's Claims**

On May 20, 2010, ISTA filed the Complaint against Senju seeking declaratory relief and monetary damages under a license agreement between Senju and AcSentient Inc. ("AcSentient") dated March 7, 2002, which ISTA assumed from AcSentient on or about May 3, 2002 pursuant to an asset purchase agreement.[2] After ISTA assumed the license agreement, ISTA and Senju entered into three amendments to the license agreement (the "Amendments;" collectively with the license agreement the "License Agreement" or "Agreement").[3]

Under the License Agreement, ISTA is obligated to make royalty payments to Senju for the use of patent rights, technical information, and know-how regarding ophthalmic products containing a non-steroidal anti-inflammatory chemical compound

---

[2] A copy of the license agreement is attached to the Matsumura Affidavit as Exhibit B. The license agreement permits AcSentient to assign all of its rights and obligations under the agreement to a third party in connection with the sale of all or substantially all of its assets. Matsumura Affidavit, Exhibit B at § 20. A copy of the asset purchase agreement between ISTA and Acsentient in which ISTA assumed the rights and obligations of Acsentient under the License Agreement is attached to the Matsumura Affidavit as Exhibit F at Exhibit A. A copy of a letter from AcSentient to Senju confirming that ISTA assumed "all rights and obligations" of AcSentient under the license agreement pursuant to the asset purchase agreement is attached to the Matsumura Affidavit as Exhibit C.

[3] Copies of the Amendments are attached to the Matsumura Affidavit as Exhibit D.

-2-

MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT'S MOTION

6626625.1

called Bromfenac.  ISTA markets an ophthalmic product known as "Xibrom," which contains Bromfenac.  "Patent Rights" were initially defined in the Agreement as U.S. Patent No. 4,910,225 (the "Patent") as well as "other patents including any reissues, renewals, extensions or patents of addition thereto."  "Technical Information and Know-How" was defined as information and know-how available to Senju during the term of the Agreement relating to ophthalmic products containing Bromfenac.  The Patent expired on January 27, 2009.  Matsumura Affidavit, Exhibit A at ¶¶ 9 and 14, Exhibit B at 1-2, 5-8.

On May 31, 2006, before the Patent expired, ISTA and Senju entered into the second amendment to the License Agreement (the "Second Amendment") whereby they agreed to expand the definition of Patent Rights to include, among other things, U.S. Patent Application Publication No. US 2005/023985 A1 (the "Pending Patent") and all of Senju's patents or patent applications in the United States relating to Bromfenac and ophthalmic products containing Bromfenac, or to technical information and know-how which is useful in the development of ophthalmic products containing Bromfenac in the United States (the "Expanded Patent Rights").  The Second Amendment also extended the term of the Agreement to the expiration of any patents issued in the United States that is included in the Expanded Rights if such patents last longer than the initial term.  Matsumura Affidavit, Exhibit A at ¶¶ 10-13, Exhibit D, Second Amendment at ¶¶ 3 and 7.

On February 16, 2010, after the Patent expired, ISTA and Senju entered into the third amendment to the License Agreement (the "Third Amendment") whereby they agreed to expand the territory in which ISTA may use the Expanded Patent Rights to include Canada and Mexico.  As a result, the Expanded Patent Rights include all of Senju's patents or patent applications in North America relating to Bromfenac or to

technical information and know-how which is useful in the development of ophthalmic products containing Bromfenac in North America. Under the Third Amendment, ISTA agreed to make royalty payments for the Expanded Patent Rights, Technical Information, and Know-How after the expiration of the Patent. Matsumura Affidavit, Exhibit A at ¶ 18, Exhibit D, Third Amendment at ¶ 2.

ISTA, however, intentionally stopped paying royalties for Xibrom in April 2010, in breach of the License Agreement, and then filed this action seeking, among other things, a judgment declaring that it is no longer obligated to pay royalties under the License Agreement and that Senju may not terminate the Agreement for ISTA's non-payment of royalties. The essence of ISTA's Complaint is that its obligation to make royalty payments for Xibrom under the License Agreement expired when the Patent expired on January 27, 2009, and that the Second and Third Amendments for the Expanded Patent Rights do not cover Xibrom and do not obligate it to make royalty payments beyond the Patent's expiration date. Matsumura Affidavit, Exhibit A.

Based on this argument, the Complaint asserts four causes of action against Senju for (1) a declaratory judgment, (2) violation of the Sherman Act, (3) unjust enrichment, and (4) unfair, fraudulent and unlawful business practices under California Business and Professional Code § 17200. Matsumura Affidavit, Exhibit A at ¶¶ 34-53. In addition to the declaratory judgment, ISTA seeks restitution in the amount of $8,697,018 for alleged royalty payments made after the expiration of the Patent, consequential damages, treble damages, attorneys' fees and costs. Matsumura Affidavit, Exhibit A at 11.

**B.     The License Agreement's Arbitration Provision**

The License Agreement contains a broad arbitration provision which requires "all disputes" between the parties to be referred to and settled by an ICC arbitration to be held in Japan in accordance with the ICC's Rules. Section 17.02 of the License Agreement provides:

> All disputes, controversies or differences which may arise between the Parties hereto or for the breach thereof shall be referred to and settled by arbitration in accordance with the Arbitration Rules of the International Chambers of Commerce as currently in force by one or more arbitrators appointed under the Rules. Such arbitration hereunder shall be proceeded in English language and shall be held in Japan. The determination of the arbitration shall be final, binding and conclusive upon the Parties hereto.

Matsumura Affidavit, Exhibit B at § 17.02.[4] The ICC Rules, which are incorporated by reference in the arbitration provision, provide that ICC arbitrators decide issues of arbitrability, i.e., issues regarding the "existence, validity or scope" of the agreement to arbitrate. ICC Rule 6(2).[5]

---

[4] A copy of the Arbitration Rules of the International Chamber of Commerce is attached to the Matsumura Affidavit as Exhibit E.

[5] Rule 6(2) of the ICC Rules provides in relevant part:

> If the Respondent does not file an answer, . . . or if any party raises one or more pleas concerning the existence, validity or scope of the arbitration agreement, the [ICC] Court may decide, without prejudice to the admissibility or merits of the plea or pleas, that arbitration shall proceed if it is prima facie satisfied that an arbitration agreement under the Rules may exist. In such a case, any decision as to the jurisdiction of the Arbitral Tribunal shall be taken by the Arbitral Tribunal itself. If the Court is not so satisfied, the parties shall be notified that the arbitration cannot proceed.

The license agreement attached to ISTA's Complaint is unsigned and not the final version of the agreement between the parties. The final signed version is attached to the Matsumura Affidavit as Exhibit B, and differs from ISTA's version in that section 17.02 selects Japan as the place of the ICC arbitration. The Agreement also provides that it "shall be governed and interpreted in accordance with the laws of Japan." Senju provided ISTA a copy of the signed Agreement on July 2, 2010. Matsumura Affidavit, Exhibit B at § 17.01.

The Amendments do not change the parties' agreement to arbitrate before the ICC in Japan in any way. In fact, both the Second and Third Amendments confirm the parties' intent to arbitrate their disputes by providing:

> Unless stated herein, all other terms and conditions of the Agreement shall remain unchanged.
>
> \* \* \*
>
> This Amendment, taken together with the Agreement, represents the entire agreement of the parties and shall supersede any and all previous contracts, arrangements or understandings between the parties with respect to the Agreement.

Matsumura Affidavit, Exhibit D, Second Amendment at ¶¶ at 9-11, Third Amendment at ¶¶ 5-6.

As explained in more detail below, each of ISTA's causes of action is subject to mandatory ICC arbitration in Japan pursuant to section 17.02 of the License Agreement, and not to litigation in the Central District of California.

/ / /

/ / /

/ / /

# ARGUMENT

## I.

## THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P 12(b)(1) AND (6) FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CAUSE OF ACTION

A district court should dismiss a complaint where the parties agreed to arbitrate all of their disputes and their agreement includes an agreement to follow a particular set of arbitration rules, such as the ICC Rules, that provide that arbitrability is to be decided by the arbitrators. *Poponin v. Virtual Pro, Inc.*, 2006 WL 2691418 *9, 11-12 (N.D. Cal. 2006) (dismissing complaint for lack of subject matter jurisdiction because the parties agreed to arbitrate their disputes, including arbitrability, under the ICC Rules); see also *Shaw Group Inc. v. Triplefine International*, 322 F.3d 115, 122-23 (2d Cir. 2003) (compelling arbitration because parties agreed to arbitrate their disputes, including arbitrability, under the ICC Rules); *Appolo Computer Inc. v. Berg*, 886 F.2d 469, 472-73 (1st Cir. 1989) (denying motion to stay arbitration because parties agreed to arbitrate arbitrability pursuant to ICC Rules); *Daiei, Inc. v. United States Shoe Corp.*, 775 F.Supp. 299, 301-303 (D.Haw. 1991) (dismissing complaint for failure to state a cause of action because parties agreed to arbitrate their disputes, including arbitrability, pursuant to ICC Rules).

ISTA clearly agreed to arbitrate all disputes under the Agreement before the ICC in Japan. Section 17 of the final version of the Agreement follows the recommendations of the ICC for drafting a "Standard ICC Arbitration Clause" in that it expressly states that all disputes shall be decided by ICC arbitration, Japanese law shall govern the Agreement, Japan shall be the place of the arbitration, and English shall be the language of the arbitration. *Compare* Matsumura Affidavit, Exhibit B, § 17.02 *with* Matsumura

Affidavit, Exhibit E, "Standard ICC Arbitration Clause." By agreeing to arbitrate under the ICC Rules, ISTA also agreed that issues of arbitrability would be submitted to ICC arbitration because the ICC Rules provide that arbitrators determine arbitrability. Matsumura Affidavit, Exhibit E at Rule 6(2). Accordingly, the complaint should be dismissed pursuant Fed. R. Civ. P. 12(b)(1) and (6) for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted. *Poponin*, 2006 WL 2691418 at 9, 11-12; *Daiei*, 775 F.Supp. at 301-303.

## II.
## ALTERNATIVELY, ISTA'S CLAIMS SHOULD BE STAYED UNDER THE FEDERAL ARBITRATION ACT

In the event that the Court is not inclined to dismiss the Complaint, it should stay this action pursuant to section 3 of the Federal Arbitration Act ("FAA") pending arbitration. The FAA establishes a strong federal policy favoring arbitration of disputes. See *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999); *Cronin v. Monex Deposit Company*, 2009 WL 412023, *2 (C.D. Cal. 2009).

The FAA mandates arbitration of any dispute covered by a valid arbitration agreement. 9 U.S.C. §§ 3 and 4; *Simula*, 175 F.3d at 719-20. A federal court asked to stay an action pending arbitration must determine: (1) whether the parties agreed to arbitrate, and (2) whether the scope of the agreement to arbitrate covers the asserted dispute. See *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-27 (1985); *Simula*, 175 F.3d at 719-21; *Hadlock v. Norwegian Cruise Line, Ltd.*, 2010 WL 1641275, *3 (C.D.Cal. 1010).

-8-

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION

6626625.1

A. <u>**ISTA Agreed to Arbitrate**</u>

Here there is no dispute that the License Agreement contains an agreement to arbitrate under the ICC Rules. ISTA concedes in the Complaint that it assumed the License Agreement from AcSentient and thereafter entered into the Amendments, each of which states that the terms and conditions of the Agreement remain unchanged. The Amendments confirm ISTA's assumption of all of the obligations under the Agreement, including the obligation to arbitrate before the ICC in Japan. Matsumura Affidavit, Exhibit A at ¶¶ 7, 17, 20, 28, 35-37, Exhibits C and D. Thus, ISTA has clearly agreed to arbitrate before the ICC in Japan.

B. <u>**The Scope of the Arbitration Provision Covers ISTA's Claims Against Senju**</u>

The arbitration provision provides that "[a]ll disputes, controversies or differences which may arise between the Parties hereto or for the breach thereof shall be referred to and settled by arbitration . . . ." Matsumura Affidavit, Exhibit B at § 17.02. Courts in this Circuit interpret such language broadly when determining whether the scope of a provision covers the parties' dispute. *Simula*, 175 F.3d at 720-21; *Hadlock*, 2010 WL 1641275 at *3; *Cronin*, 2009 WL 412023 at *2. To require arbitration, the factual allegations need only "touch matters" covered by the agreement containing the arbitration provision and all doubts are to be resolved in favor of arbitration. *Simula*, 175 F.3d at 719, 721 (citations omitted).

The broad language of the arbitration provision plainly covers the dispute here because all of the claims against Senju relate directly to ISTA's business relationship with Senju under the Agreement. Specifically, ISTA's claims relate to its obligation to make royalty payments for the Expanded Patent Rights, Technical Information and

-9-

MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT'S MOTION

6626625.1

Know-How under the License Agreement after the expiration of the Patent. Resolution of ISTA's causes of action will require interpretation of the Agreement and the Amendments and the rights and obligations of both parties thereunder. The causes of action, therefore, fall within the scope of the arbitration provision and should be stayed pending arbitration. See, e.g., *Comedy Club, Inc. v. Improv West Assoc.*, 553 F.3d 1277 (9th Cir. 2009) (declaratory judgment action for interpretation of license agreement arbitrable); *Medtronic Ave., Inc. v. Cordis Corp.*, 100 Fed. Appx. 865 (3d Cir. 2004) (interpretation of patent rights under license agreement arbitrable); *Simula*, 175 F.3d at 72-22, citing *Mitsubishi*, 473 U.S. 632-35 (anti-trust claims arbitrable); *Guadango v. E*Trade Bank*, 592 F.Supp2d 1263 (C.D. Cal. 2008) (unjust enrichment claims arbitrable); *Smith v. Americredit Financial Services, Inc.*, 2009 WL 4895280 (S.D. Cal. 2009) (claims under California Business and Professional Code § 17200 arbitrable). Because ISTA was obligated to submit all of its claims to ICC arbitration, not to litigation, it violated the arbitration provision of the License Agreement.

## III.

## SENJU SHOULD BE AWARDED DAMAGES
## IN CONNECTION WITH THIS MOTION

The award of attorneys' fees is appropriate when a party frivolously or in bad faith refuses to submit a dispute to arbitration or appeals from an order compelling arbitration. See *United Food & Commercial Workers Union v. Alpha Beta Company*, 736 F.2d 1371 (9th Cir. 1984). On June 25, 2010, Senju requested that ISTA voluntarily dismiss this action and submit all disputes it has with Senju to ICC arbitration pursuant to section 17.02 of the Agreement, but ISTA refused. ISTA has failed to arbitrate this dispute without a legitimate ground for doing so. Id. Therefore, Senju should be awarded the costs and attorneys' fees incurred in connection with this motion.

# CONCLUSION

For the foregoing reasons, Senju respectfully requests that this Court:

(1) enter an order dismissing the action, or staying the action pending arbitration with the ICC, under Section 17.02 of the License Agreement;

(2) award Senju costs and attorneys' fees incurred in bringing this motion; and

(3) such other and further relief as this Court deems just and proper.

Dated: July 8, 2010        CARTER LEDYARD & MILBURN LLP

By: /s/
William F. Sondericker
Keith D. Nowak
Sondericker@clm.com
Nowak@clm.com
2 Wall Street
New York, New York 10005
Telephone: (212) 732-3200
Facsimile: (212) 732-3232

GREENBERG, WHITCOMBE & TAKEUCHI, LLP
Derrick K. Takeuchi
dtakeuchi@gwtllp.com
21515 Hawthorne Boulevard, Suite 450
Torrance, California 90503
Telephone: (310) 540-2000
Facsimile: (310) 540-6609

Attorneys for Defendant
Senju Pharmaceutical Co., Ltd.

To:    Allan Z. Litovsky, Esq.
Greenberg Traurig, LLP
3161 Michelson Drive, Suite 1000
Irvine, California 92616
Telephone:  (949) 732-6500
Facsimile:  (949) 732-6501
E-mail:  LitovskyA@gtlaw.com

Attorneys for Plaintiff
ISTA Pharmaceutical, Inc.

-12-

MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT'S MOTION

6626625.1