1  CARTER LEDYARD & MILBURN LLP
   William F. Sondericker (NY State Bar No. 1571439)
2  Sondericker@clm.com
   Keith D. Nowak (NY State Bar No. 1628825)
3  Nowak@clm.com
   2 Wall Street
4  New York, New York 10005
   Telephone:  (212) 732-3200
5  Facsimile:   (212) 732-3232

6  GREENBERG, WHITCOMBE & TAKEUCHI, LLP
   Derrick K. Takeuchi (CA Bar No. 97878)
7  dtakeuchi@gwtllp.com
   21515 Hawthorne Boulevard, Suite 450
8  Torrance, California 90503
   Telephone: (310) 540-2000
9  Facsimile: (310) 540-6609

10                UNITED STATES DISTRICT COURT
11              CENTRAL DISTRICT OF CALIFORNIA
                       WESTERN DIVISION
12

13  ISTA PHARMACEUTICALS, INC.,          )  Case No. CV10-3219 GW (JEM)
                                         )
14         Plaintiff,                    )  **REPLY MEMORANDUM OF LAW
                                         )  IN SUPPORT OF DEFENDANT'S
15         v.                            )  MOTION TO DISMISS OR TO
                                         )  STAY THE ACTION PENDING
16  SENJU PHARMACEUTICAL CO., LTD.,      )  ARBITRATION**
                                         )
17         Defendant.                    )
                                         )
18

19

20

21

22

23

24

25

26

27

28

6645903.5

REPLY MEMORANDUM OF LAW

# TABLE OF CONTENTS

Page No.

TABLE OF AUTHORITIES ........................................................................ ii

PRELIMINARY STATEMENT ..................................................................... 1

ARGUMENT ........................................................................................... 4

I.   ISTA ASSUMED THE ARBITRATION PROVISION
     BY ASSIGNMENT ............................................................................ 4

     A.   The License Agreement and the APA ..................................... 4

     B.   Law of Assignment ............................................................. 10

II.  ISTA ASSUMED THE ARBITRATION PROVISION
     BY ADOPTION IN THE FIRST AMENDMENT AS A
     "PARTY" TO THE AGREEMENT ...................................................... 18

III. ISTA IS EQUITABLY ESTOPPED FROM DISCLAIMING
     THE ARBITRATION PROVISION ...................................................... 21

IV.  ISTA'S ANTITRUST CLAIM SHOULD BE ARBITRATED......... 23

CONCLUSION ...................................................................................... 25

REPLY MEMORANDUM OF LAW

# TABLE OF AUTHORITIES

## FEDERAL CASES

Ahtna Government Services Corp. v. 52 Rausch, LLC,
  2003 WL 403359 (N.D.Cal. Feb. 19, 2003)..............................12

America Bureau of Shipping v. Tencara Shipyard S.P.A.,
  170 F.3d 349 (2d Cir. 1999) .................................................23

Banque De Paris et des Pays-Bas v. Amoco Oil Co.,
  573 F. Supp. 1464 (S.D.N.Y. 1983) .......................................15

Brulotte v. Thys, 379 U.S. 29 (1964) ...................................17, 23

Case Int'l Co. v. T.L.James & Co., Inc.,
  907 F.2d 65 (8th Cir. 1990)..................................................12

Datatreasury Corp. v. Wells Fargo & Co.,
  522 F.3d 1368 (Fed. Cir. 2008) .........................................13, 14

Delmore v. Ricoh Americas Corp., 667 F. Supp. 2d at 1135
  (N.D.Cal. 2009) ..............................................................11, 12

E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin
  Intermediaries, 269 F.3d 187 (3d Cir. 2001).............................21

GMAC Commercial Credit LLC v. Springs Industries, Inc.,
  171 F. Supp. 2d 209 (S.D.N.Y. 2001)............................4, 15, 17

Gruntal & Co., Inc. v. Steinberg,
  854 F.Supp. 324 (D.N.J. 1994)............................................12

International Paper Co. v. Schwabedissen Maschinen & Anlagen,
  206 F.3d 411 (4th Cir. 2000) ...............................................22

In re Kmart Corp., 290 B.R. 614 (Bankr. N.D. Ill. 2003...............13, 14-15

Lachmar v. Trunkline, 753 F.2d 8 (2d Cir. 1985) .........................12

REPLY MEMORANDUM OF LAW

Legacy Wireless Serv., Inc. v. Human Capital, LLC,
    314 F. Supp. 2d 1045 (D.Or. 2004)......................................................21, 23

Letizia v. Prudential Bache Securities, Inc.,
    802 F.2d 1185 (9th Cir. 1986) ......................................................................4

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,
    473 U.S. 614 (1985) ...................................................................................24

Pullen v. Victory Woodwork, Inc.,
    2007 WL 1847633 (E.D.Cal. June 27, 2007)............................................21

Ryan, Beck & Co., LLC v. Fakih,
    268 F. Supp. 2d 210 (E.D.N.Y. 2003)..................................11, 22, 23

Shainin II, LLC v. Allen,
    2006 WL 2473495 (W.D. Wash. Aug. 28, 2006) .....................................11

Simula, Inc. v. Autoliv, Inc.,
    175 F.3d 716 (9th Cir. 1999) ..............................................................24, 25

Shaw Group, Inc. v. Triplefine International Corp.,
    2001 WL 883076 (S.D.N.Y. Aug. 3, 2001) ......................................11, 12

Szczepanik v. Through Transport Mutual Insurance Association, Ltd.,
    2008 WL 2166193 (D.N.J. May 21, 2008) ...............................................15

Thomson-CSF, S.A. v. American Arbitration Association,
    64 F.3d 773 (2d Cir. 1995) ...........................................................................4

Trippe Manufacturing Co. v. Niles Audio Corp.,
    401 F.3d 529 (3d Cir. 2005).................................................4, 11, 15, 16, 17

World Group Securities, Inc. v. Allen, 2007 WL 4168572
    (D.Ariz. Nov. 20, 2007).......................................................................22, 23

## STATE CASES

Armstrong C. v. Shell, 98 Cal. App. 769 (1929)...........................................12

iii

REPLY MEMORANDUM OF LAW

NORCAL Mutual Insurance Co. v. Newton,
    84 Cal. App. 4th 64 (2000)......................................................................21, 23

Saturn Constr. Corp Co., Inc. v. Landis & Gyr Powers, Inc.,
    656 N.Y.S.2d 367 (2d Dept. 1997)..................................................................12

Wonder Works Constr. Corp. v. R.C. Dolner, Inc.,
    901 N.Y.S.2d 30 (1st Dept. 2010)..................................................................12

## **FEDERAL STATUTES**

Fed. R. Civ. P. 12(b)(1) and (6)..........................................................................1

Federal Arbitration Act.....................................................................................1

REPLY MEMORANDUM OF LAW

Senju Pharmaceutical Co., Ltd. ("Senju") respectfully submits this reply memorandum of law in further support of its motion to dismiss the First Amended Complaint of ISTA Pharmaceuticals, Inc. ("ISTA") pursuant to Fed. R. Civ. P. 12(b)(1) and (6), or, alternatively, for a stay of this action pursuant to section 3 of the Federal Arbitration Act pending arbitration (the "Motion"), and in response to ISTA's brief in opposition to the Motion dated August 2, 2010 ("ISTA Brief"), the Declaration of Vicente Anido, Jr., dated July 30, 2010 ("Anido Declaration"), and ISTA's Objections to Evidence dated August 2, 2010 ("Objections").[1]

## PRELIMINARY STATEMENT

ISTA is bound by the arbitration provision of the License Agreement because it (1) assumed by purchase and assignment all of the obligations of the License Agreement, including the arbitration provision, in an Asset Purchase Agreement with AcSentient dated May 3, 2002 (the "APA"), (2) assumed by adoption in the First Amendment to the License Agreement all of the provisions of the Agreement, including the arbitration provision, as a "party" to the Agreement, and (3) operated and benefited from the

---

[1] This reply adopts the defined terms in Senju's moving brief dated July 8, 2010, which shall be referred to herein as the "Senju Brief." The declarations of Shuji Matsumura dated August 5, 2010 ("Matsumura Reply Declaration") and Derrick K. Takeuchi dated August 9, 2010 ("Takeuchi Declaration"), Request for Judicial Notice, and the affidavit of John T. Musante dated August 6, 2010 ("Musante Affidavit") are respectfully submitted with this reply. Mr. Matsumura's Affidavit dated July 8, 2010 shall be referred to herein as the "Matsumura Affidavit." Concurrently with the filing of this reply and supporting papers, Senju has respectfully submitted to the Court copies of the documents on a CD-ROM in PDF format. A copy of the CD-ROM has also been provided to

6645903.5                                                    REPLY MEMORANDUM OF LAW

provisions of the Agreement for eight years and therefore is equitably estopped from disclaiming the arbitration provision now.

ISTA argues that it is not obligated to arbitrate because it "never signed and never assumed" the arbitration provision of the License Agreement. ISTA Brief at 1, 12-14. While ISTA concedes that it assumed all of AcSentient's rights under the Agreement, ISTA argues that it only assumed the "performance and payment obligations" of the Agreement. According to ISTA, "performance and payment obligations" do not include the alleged "procedural" obligation to arbitrate. ISTA Brief at 14. ISTA further argues that the First Amendment to the License Agreement ratifies its assumption of only "certain" liabilities.[2] ISTA Brief at 15. As explained below, performance obligations means all obligations of an agreement, including the duty to arbitrate under § 17.02 of the assumed License Agreement. In fact, relevant case law rejects avoidance of arbitration provisions of agreements based upon alleged assumption of only "certain" obligations in the agreement. Moreover, the provisions of the First Amendment do not "ratify" ISTA's assumption of  only "certain" obligations, but rather confirm that ISTA replaced AcSentient as a **Party** to the License Agreement, with no exclusion of § 17.02.

Alternatively, ISTA argues that even if AcSentient assigned all of the obligations of the License Agreement to ISTA in the APA, a broad assignment of obligations of an

---

Plaintiff's counsel.

[2] ISTA does not identify what these "certain" liabilities allegedly are and fails to identify what liabilities were allegedly not assumed.

2

REPLY MEMORANDUM OF LAW

agreement does not include the agreement's arbitration provision "as a matter of law." ISTA Brief at 14, 18-20.   According to ISTA, it can only be bound by the License Agreement's arbitration provision by an independent and expressed written assumption of the provision.  ISTA Brief at 18.  This is patently incorrect.  Applicable case law holds that an assignee of an agreement is bound by its arbitration provision even if it has not independently and expressly assumed the provision.  The alleged "overwhelming" case law cited by ISTA is not overwhelming, is inapplicable, and does not support ISTA's professed legal position.

Based on these arguments, ISTA asks the Court to hold that (1) the Court not the ICC arbitrators must decide whether an agreement to arbitrate exists with Senju, (2) the arbitration provision and its reference to the ICC Rules is irrelevant, (3) the federal policy favoring arbitration does not apply, (4) ISTA is not bound by the arbitration provision of the License Agreement, and (5) ISTA cannot be compelled to arbitrate.  ISTA Brief at 1. Because ISTA does not challenge the scope of the arbitration agreement, but rather its existence, Senju agrees that the Court should determine whether an agreement to arbitrate exists, that the ICC Rules are not relevant to determining whether an agreement exists,[3]

---

[3] In section III.F.4 of the ISTA Brief, ISTA argues that its antitrust claim should be decided by the Court for public policy reasons.  To the extent this argument relates to the scope of the arbitration agreement and not its existence, the ICC arbitrators should determine this issue pursuant to section 6(2) of the ICC rules, which are incorporated by reference in the arbitration provision, and in accordance with the strong federal policy favoring arbitration of international disputes.  See Senju Brief, Point I.

REPLY MEMORANDUM OF LAW

and that the policy favoring arbitration will not apply if an agreement does not exist.[4]

ISTA, however, as explained below, is bound by the arbitration provision of the License Agreement and should be barred from proceeding in this action in favor of arbitration.

## ARGUMENT

The determination of whether a non-signatory is bound by an arbitration agreement is governed by federal substantive law on arbitrability.  Letizia v. Prudential Bache Securities, Inc., 802 F.2d 1185, 1187 (9th Cir. 1986).  Under federal law, a non-signatory may be bound by an arbitration agreement under ordinary contract and agency principles, including: (1) assumption; (2) equitable estoppel; (3) incorporation by reference; (4) agency; and (5) alter ego or veil piercing.  Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995); Trippe Manufacturing Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005).  ISTA is bound by the arbitration provision of the License Agreement under the principles of assumption and equitable estoppel.

### I.
### ISTA ASSUMED THE ARBITRATION PROVISION BY ASSIGNMENT

#### A.    The License Agreement and the APA

The terms of the License Agreement and the APA establish that AcSentient assigned the entire Agreement to ISTA, with no exclusion of the Agreement's arbitration

---

[4] In interpreting an arbitration agreement, however, due regard must be given to the federal policy favoring arbitration. GMAC Commercial Credit LLC v. Springs Industries,

4

REPLY MEMORANDUM OF LAW

provision.  Article 20 of the License Agreement prohibited AcSentient from assigning the

Agreement without Senju's consent unless AcSentient assigned the entire Agreement in

connection with the sale of substantially all of its assets.  Article 20 provides:

> Article 20 – Non-Assignability
> This **License Agreement** is personal to the Parties hereto and shall not be assignable to any Third Party by either Party without the prior express written consent of the other Party, such consent not to be unreasonably withheld; provided, however, subject to section 16.06, that no such approval shall be required from SENJU if this **License Agreement** is assigned in connection with the sale of all or substantially all of the assets or stock of ACSENTIENT, whether by merger, acquisition or otherwise.

Matsumura Affidavit, Exhibit B, Article 20 (emphasis added).  Article 20 does <u>not</u> make

a distinction between "performance" and "procedural" obligations, and only permits the

assignment of the entire "License Agreement," not portions of it.  Anything less than a

total assignment would have required Senju's consent.  If AcSentient assigned more than

what it had the right to assign under Article 20, the assignment would be invalid.

On May 3, 2002, AcSentient assigned the **entire** License Agreement to ISTA in

connection with its sale of substantially all of its assets to ISTA.  The APA sets forth the

terms of the sale, including defining the assets sold.  Section 1.01 of the APA provides in

relevant part:

> "<u>Assets</u>" means all of the Products, Data, INDs (including the Orphan Drug Designation), Intellectual Property, Know-How, **License Agreements**, Books and Records, Contracts to which

Inc., 171 F.Supp.2d 209, 214 (S.D.N.Y. 2001).

5

REPLY MEMORANDUM OF LAW

Seller is a party relating to any of the foregoing, and all rights or assets owned or controlled by Seller relating to the Compounds.

"<u>Assumed Liabilities</u>" means the **performance and payment obligations** imposed on Seller under the **License Agreements**, **including, but not limited to,** the obligation to make milestone and royalty payments and obligations to conduct pre-clinical and clinical studies and to seek regulatory approval, all as related to the Compounds and pursuant to the terms of the **License Agreements**.

"<u>License Agreements</u>" means the **Senju License Agreements** and the **EVMS License Agreement**.

"<u>Senju License Agreement(s)</u>" means the **Bromfenac License Agreement** and the Agreement by and between Senju and Seller dated April 17, 2002, including in each case any amendments thereof.

"<u>Bromfenac License Agreement</u>" means the **License Agreement** by and between Senju and [AcSentient] dated March 7, 2002.

Anido Declaration, Exhibit B at § 1.01 (emphasis added).  As shown above, multiple assets were sold to ISTA in the APA, including two license agreements, one with Senju and the other with the Eastern Virginia Medical School ("EVMS").

With respect to the License Agreement with Senju, the APA does not contain any limitations on the assignment of obligations, or any limitation on the assignment of the duty to arbitrate.  The only limitation in the APA on any of the obligations of the two license agreements, concerns the EVMS License Agreement.  The APA provides:

<u>Assignment of **Certain Rights and Obligations** under Agreements</u>  At the Closing, Seller shall assign to Buyer and

6

REPLY MEMORANDUM OF LAW

> Buyer **shall assume the rights and obligations to the License Agreements**, subject to the delivery by Seller to Buyer of a written agreement in a form satisfactory to Buyer, signed by the Eastern Virginia Medical School, pursuant to which Eastern Virginia Medical School consents to the transfer and assignment of the EVMS License Agreement to Buyer. Notwithstanding Buyer's assumption of such rights and obligations, Seller shall solely maintain responsibility, and Buyer specifically does not assume any responsibility, for the obligation under Section 2.7 of the EVMS License Agreement to pay 10% of all income or other compensation received or provided as a result of any transfer or assignment, to the extent such obligation may be applicable to this Agreement and the transactions contemplated hereby.

Anido Declaration, Exhibit B at § 5.01 (emphasis added).  Thus, § 5.01 establishes that ISTA assumed all of the rights and obligations of the two license agreements, except for the obligation to make certain payments under the EVMS License Agreement.  The two license agreements otherwise remained "in full force and effect **without limitation**, modification or alteration" at the closing of the APA.  Anido Declaration, Exhibit B at § 3.06(b) (emphasis added).  Section 5.01's heading referring to the assignment of "certain" rights and obligations under the agreements is a reference to the limitation under the EVMS License Agreement, and not to ISTA's obligation to arbitrate under the License Agreement with Senju, as ISTA now contends.  Musante Affidavit, ¶¶ 5-7.[5]

---

[5] ISTA conveniently omits the specific disclaimer of the payment obligation under the EVMS License Agreement while quoting § 5.01, disingenuously implying at the same time that it assumed only "certain" obligations of the Senju License Agreement.  ISTA Brief at 13-14.

REPLY MEMORANDUM OF LAW

6645903.5

Senju is <u>not</u> a party to the APA.  John Musante, AcSentient's Chief Business Officer, notified Senju of AcSentient's sale by letter dated May 4, 2002, which stated that AcSentient assigned "all the rights and obligations" of the Agreement to ISTA.  Musante Affidavit, ¶ 7, Exhibit A.  Mr. Musante confirms AcSentient's assignment of the entire Agreement to ISTA in his affidavit submitted with this reply.  Musante Affidavit, ¶¶ 2, 6.

ISTA also confirmed the assignment of the entire Agreement to it in its public filings with the SEC.  ISTA's Form 10K for the year 2003 states, "[t]he **full rights and obligations** of AcSentient under both license agreements were transferred to ISTA as a part of the acquisition agreement between ISTA and AcSentient, with such transfer approved by Senju."  Takeuchi Declaration, Exhibit B at 9 (emphasis added).  ISTA's 10K for 2009 states, "[t]he **full rights and obligations** of AcSentient under the Senju license agreements were assigned to us as a part of the acquisition agreement between us and AcSentient, with such transfer approved by Senju." Takeuchi Declaration, Exhibit A at 5 (emphasis added).  One may thus infer that ISTA only decided that it had not assumed the arbitration provision, when it stopped paying royalties and sued Senju in 2010.  It comes with **ill grace** for ISTA to make its disclaimer in this litigation in the face of its own official documents, filed with the SEC as recently as 2009 and certified to be truthful and not misleading, that make directly contrary representations to the public and ISTA's shareholders.

8

REPLY MEMORANDUM OF LAW

ISTA compounds its delusive assertions with its sworn testimony that "it was not its intent to arbitrate any disputes with Senju" and that "it never signed the License Agreement or any other agreement with Senju that contains an arbitration provision." Anido Declaration, ¶¶ 4, 6.  First, ISTA's intentions are immaterial.  The unambiguous terms of the APA establish its assumption of the entire Agreement.  Second, had ISTA intended not to arbitrate disputes with Senju, it knew how to disclaim the obligation in the APA, having expressly disclaimed the payment obligation of the EVMS License in § 5.01 of the APA.  Finally, ISTA's aforesaid sworn testimony of not having made other arbitration agreements with Senju is squarely **impeached** by documentary evidence to the contrary.  ISTA has signed six other agreements with Senju, four of which are license agreements, that contain arbitration provisions similar to the provision of the License Agreement.  Matsumura Reply Declaration, Exhibits A (Article 18), B (Article 26), C (Article 24), D (Article 23), E (Article 23), F (Article 27).[6]

In sum, ISTA's 10Ks and the false Anido Declaration **discredit** the heart of ISTA's assertions. AcSentient assigned all of its rights and obligations under the License Agreement to ISTA, including the duty to arbitrate.  There is no provision in the APA that excludes the arbitration provision.  In fact, the APA always refers to the entire Agreement and states that it will be in "full force and effect without limitation" at the closing of the APA.  Anido Declaration, Exhibit B at § 3.06.  Both AcSentient and ISTA

---

[6] Mr. Anido signed three of these agreements.

9

REPLY MEMORANDUM OF LAW

confirmed the assignment of the entire Agreement.  ISTA filed 10K Statements confirming the assignment of the entire Agreement, which are required to be truthful and not misleading under Rule 10b(5) of the Securities Exchange Act.  The first and only time ISTA disputes its duty to arbitrate is in this litigation.  It is thus beyond dispute that ISTA assumed the License Agreement with its arbitration provision by assignment in the APA.[7]

### B.    Law of Assignment

When an assignee assumes the obligations of an assignor under an agreement, it is bound by the arbitration clause of the agreement, even if the assignee has not expressly

---

[7] ISTA argues that it did not assume AcSentient's obligations under License Agreement in the APA, but rather in the Assignment and Assumption Agreement dated May 9, 2002 ("AAA"), the date of the closing.  ISTA Brief at 13.  The AAA provides in relevant part:

> 1.1    Seller hereby sells, transfers, assigns, conveys and delivers to, and vests in Buyer, all of its right, title and interest in and to the Assets, pursuant to and subject to all representations, warranties, covenants, conditions, and all other agreements contained in the [APA], and Buyer hereby assumes and agrees to perform and discharge, in due course, only the Assumed Liabilities.

> 1.2    This Agreement is intended to make effective the assignment of the Assets and the assumption of the Assumed Liabilities.  Nothing herein is intended to supersede or modify any provisions of the [APA].

The AAA effectuates the assignment of the "Assumed Liabilities" as defined in the APA, including the several license agreements, and confirms the provisions and representations of the APA at the time of the closing.  It does not effect the above analysis of the assignment of the License Agreement under the provisions of the APA in any way.  Thus, ISTA's argument is a distinction without a difference.

10

REPLY MEMORANDUM OF LAW

assumed the arbitration clause.   See, e.g., Trippe Manufacturing Co. v. Niles Audio Corp., 401 F.3d 529, 533 (3d Cir. 2005) (Alito J.) (broad assignment of agreement includes arbitration clause) Delmore v. Ricoh Americas Corp., 667 F.Supp2d 1129, 1135 (N.D.Cal. 2009) (same); Shainin II, LLC v. Allen, 2006 WL 2473495, *5 (W.D. Wash. Aug. 28, 2006) (same);  Ryan, Beck & Co., LLC v. Fakih, 268 F.Supp.2d 210, 219-20 (E.D.N.Y. 2003) (same); Shaw Group, Inc. v. Triplefine Int'l Corp., 2001 WL 883076, *1-2 (S.D.N.Y. Aug. 3, 2001) (same).

In Shaw, plaintiff acquired most of the assets of a debtor through a bankruptcy sale, including the debtor's representation agreement with the defendant, which contained an arbitration provision requiring resolution of disputes through ICC arbitration.  After defendant commenced an arbitration against plaintiff, plaintiff moved to stay the arbitration on the ground that it was not a signatory to the representation agreement. Applying Thomson, the Court held that plaintiff had acquired the representation agreement when it purchased most of the debtor's assets in the bankruptcy sale, and thus it assumed the agreement and its arbitration provision, even though plaintiff had not independently and expressly assumed the arbitration provision.  Shaw, 2001 WL 883076, *1-2.[8]   Here, as in Shaw, ISTA acquired substantially all of AcSentient's assets,

---

[8] ISTA attempts to distinguish Shaw by stating that "both litigants in that case were original signatories to an agreement with a broad arbitration provision."  ISTA Brief at 9. ISTA grossly misstates the facts of Shaw.  In Shaw, plaintiff assumed the agreement **without** signing it when it was held to have purchased the debtor-signatory's assets in a bankruptcy sale – a situation comparable to ISTA's purchase of assets from AcSentient.

11

REPLY MEMORANDUM OF LAW

including the License Agreement, through the APA.  Thus, ISTA assumed the License Agreement and its arbitration provision, even though it did not independently and expressly assume the arbitration provision.  <u>Shaw</u>, 2001 WL 883076, \*1-2; <u>Delmore</u>, 667 F.Supp.2d at 1135 (N.D.Cal. 2009).[9]

ISTA argues that it assumed only the "performance and payment obligations" under the Agreement, and that such obligations do not include "procedural obligations,"

---

[9] Despite the holdings in these cases, ISTA still argues that an independent and express written consent is required because of "overwhelming" case law.  ISTA Brief at 18. ISTA's cases are inapposite.  In <u>Lachmar v. Trunkline</u>, the assignee was granted a security interests in the assignor's rights but did not assume any obligations with respect to the agreement.  753 F.2d 8, 9-10 (2d Cir. 1985).  The defendant In <u>Armstrong C. v. Shell</u>, also did not assume any obligations. 98 Cal. App. 769, 775-78 (1929).  Similarly, in <u>Gruntal & Co., Inc. v. Steinberg</u>, the assignee expressly disclaimed liability for the assignor's obligations.  854 F.Supp. 324, 336 (D.N.J. 1994).  Here, in contrast, ISTA assumed all of the obligations of the License Agreement in the APA, therefore, <u>Lachmar</u>, <u>Armstrong</u>, and <u>Gruntal</u> do not apply.  <u>Wonder Works Constr. Corp. v. R.C. Dolner, Inc.</u>, <u>Saturn Constr. Corp Co., Inc. v. Landis & Gyr Powers, Inc.</u>, and <u>Case Int'l Co. v. T.L.James & Co., Inc.</u>, are construction cases where the general contractors attempted to bind subcontractors to the arbitration provisions in their prime contracts, arguing that the arbitration provisions in the prime contracts were incorporated by reference by general language in the subcontracts.  <u>Wonder</u>, 901 N.Y.S.2d 30 (1st Dept. 2010); <u>Saturn</u>, 656 N.Y.S.2d 367 (2d Dept. 1997); <u>Case</u>, 907 F.2d 65 (8th Cir. 1990).  This is not a construction case involving subcontracts, but rather a case concerning the assignment of assets in a purchase agreement.  It does not involve incorporation by reference of construction work, but rather the assignment of all obligations under a license in an asset purchase agreement.  Construction cases with subcontracts are neither on point nor relevant.  <u>See</u> <u>Ahtna Government Services Corp. v. 52 Rausch, LLC</u>, 2003 WL 403359, \*9-12 (N.D.Cal. Feb. 19, 2003) (discussing difference between assignees and subcontractors, and still holding subcontractor bound to arbitration provision because it held itself out as general contractor, agreed to perform terms of the prime contract, and received the benefits of the prime contract).  Here, ISTA assumed the entire License Agreement, agreed to perform its obligations and benefited from the Agreement for the past eight years.  It is therefore bound by the Agreement's arbitration provision.

REPLY MEMORANDUM OF LAW

such as arbitration.  ISTA Brief at 14 (citing <u>Datatreasury Corp. v. Wells Fargo & Co.</u>, 522 F.3d 1368, 1372-73 and <u>In re Kmart Corp.</u>, 290 B.R. 614, 618 (Bankr. N.D. Ill. 2003)).  ISTA is wrong as a matter of law.  To "perform" under a contract is to accomplish it according to its terms.  "The term applies to any action in discharge of a contract other than payment."  BLACK'S LAW DICTIONARY (3d. ed. 1933).  In other words, "a contractual duty is discharged by performance."  CALAMARI AND PERILLO ON CONTRACTS, § 21.17 (6th ed. 2009).  Thus, "performance" by its very definition, includes all of the obligations of an agreement other than payment, including so called "procedural" obligations.  Moreover, Senju is unaware of any case that makes the distinction between "performance" and "procedural" obligations in a patent license agreement.  ISTA's cases do not make this distinction either.

In <u>Datatreasury</u>, plaintiff purchased four patents from a software manufacturer ("WMR"), one of which was subject to a license agreement between WMR and defendants' subsidiary.  <u>Datatreasury</u>, 522 F.3d at 1370-71.  Neither plaintiff nor defendants signed the agreement or participated in the negotiation of its terms.  <u>Id.</u> at 1373.  Contrary to ISTA's version of the facts, WMR did <u>not</u> assign the license agreement to plaintiff, it assigned only the four patents.  In fact, assignment of the agreement was prohibited without prior consent.  <u>Id.</u> at 1371.  Plaintiff sued defendants for infringement of all four patents.  Defendants then moved to stay the action pending arbitration pursuant to the arbitration provision in the license agreement, citing cases that

13

REPLY MEMORANDUM OF LAW

stood for the general proposition that the owner of a patent cannot transfer an interest greater than what it possesses. <u>Id.</u> at 1371.  Contrary to ISTA's version of the facts, the defendants did not argue that plaintiff assumed the license agreement, but rather that the obligation to arbitrate "runs with the patent." <u>Id.</u> at 1372.  The Court denied defendants' motion on the ground that neither party signed the license agreement.  <u>Id.</u> at 1373.  In dicta, the Court distinguished defendants' cases stating that "the cases do not support a conclusion that procedural terms of a license agreement unrelated to the actual use of the patent (e.g. an arbitration clause) are binding on a subsequent owner of the patent." <u>Id.</u> at 1372-73.

ISTA misstates the holding of <u>Datatreasury</u> by stating that the case held: "an obligation to arbitrate in a patent license agreement is not a performance obligation, but rather a 'procedural obligation,' which is not assumed even when the entire license agreement is assumed." ISTA Brief at 14, 19.  As explained above, the plaintiff did not assume a license agreement.  The defendants did not even argue that plaintiff assumed a license agreement.  Assignment of the agreement was prohibited.  The court did <u>not</u> hold that performance obligations exclude arbitration.   The court did <u>not</u> hold that an agreement's arbitration provision is not assumed when the entire agreement is assumed. Thus, ISTA's reliance on <u>Datatreasury</u> is misplaced, and shows its attempt to manufacture a legal position critical to its argument that has no basis in the law.[10]

---

[10] <u>In re Kmart</u> is equally unavailing.  In <u>Kmart</u>, the issue was whether debtor's license

REPLY MEMORANDUM OF LAW

Applicable case law also makes clear that the obligation to arbitrate is not a mere "procedural" obligation that will be severed by operation of law from a license agreement acquired by an assignee.  Rather, the duty to arbitrate is a contractual remedy that is tied to the substantive rights and obligations assigned under the agreement.  Trippe, 401 F.3d at 533; see also Szczepanik v. Through Transport Mutual Insurance Ass'n, Ltd., 2008 WL 2166193, *3-4 (D.N.J. May 21, 2008); GMAC Commercial Credit LLC v. Springs Industries, Inc., 171 F.Supp.2d 209, 214 (S.D.N.Y. 2001); Banque De Paris et des Pays-Bas v. Amoco Oil Co., 573 F.Supp. 1464, 1470 (S.D.N.Y. 1983).  To avoid this contractual remedy, the assignee must obtain a waiver from the original party (in this case Senju) to the arbitration agreement.   See, e.g., GMAC, 171 F.Supp.2d at 214 (S.D.N.Y. 2001) (citing Banque De Paris, 573 F.Supp. at 1470-71)).

In Trippe, plaintiff acquired several assets of a distributor, including its exclusive distribution agreement with defendant, pursuant to an asset purchase agreement.  In the

---

agreement for software was an executory contract, i.e., an ongoing contract that the estate must assume if it wished to retain the benefits of the agreement.  The debtor argued that there was no other obligation left to perform under the agreement except payment.  The licensor argued that its performance, as well as debtor's, was substantial and ongoing.  In trying to determine if any obligations remained under the agreement, the court referenced some examples of obligations that may be performed under a license agreement such as "reporting, labeling, policing, service, maintenance, and technological upgrades."  In re Kmart Corp., 290 B.R. at 618.  ISTA takes that list of examples, along with two other examples pulled from an internet article authored by an Australian lawyer, and concludes that performance obligations do not include the duty to arbitrate.  ISTA Brief at 14. Nothing in Kmart or the non-binding internet article says that arbitration is not a performance obligation.  ISTA's resort to these examples of performance do not support the proposition or argument that assumption of performance obligations in the License

REPLY MEMORANDUM OF LAW

asset purchase agreement, plaintiff assumed only certain liabilities of the distributor and disclaimed all other liabilities.   After defendant commenced an arbitration against plaintiff, plaintiff moved for a judgment declaring that the arbitration provision was not binding because plaintiff was not a signatory to the agreement.  Plaintiff argued, as ISTA does here, that no arbitration agreement existed because it only assumed "certain" liabilities of the distributor and it had not independently and expressly assumed the arbitration provision. Justice Alito, then sitting in the Third Circuit, rejected that argument, explaining that the obligation to arbitrate is not distinct and severable from the substantive obligations imposed by the agreement, because "an assignment cannot alter a contract's bargained for remedial measures, for then the assignment would change the very nature of the rights assigned."  Because the arbitration provision covered all disputes under the agreement, the agreement to arbitrate was coextensive with the substantive obligations assumed by plaintiff in the asset purchase agreement.   In other words, plaintiff agreed to arbitrate disputes related to obligations it assumed in the asset purchase agreement. Trippe, 401 F.3d at 532-33.

Here, under the License Agreement, ISTA assumed the obligation to pay royalties for the use of Senju's patent rights, including technical information and know-how as defined in the Agreement.  It stopped paying royalties in April 2010, despite continuing to use the patent rights, on the ground that the payment obligation is allegedly illegal and

Agreement excludes the arbitration provision and obligations in the APA.

REPLY MEMORANDUM OF LAW

unenforceable under <u>Brulotte v. Thys</u>, 379 U.S. 29 (1964).  Senju has demanded payment and ISTA has refused.  This dispute is clearly covered by the arbitration provision of the Agreement.  Pursuant to <u>Trippe</u>, even if ISTA had not assumed all of the obligations of the License Agreement, which it did, it cannot avoid arbitration of this dispute because arbitration is the remedial measure tied to the use of and payment for the patent and other rights granted under the License Agreement.  Thus, ISTA must arbitrate this dispute before the ICC.  <u>Trippe</u>, 401 F.3d at 532-33; <u>GMAC</u>, 171 F.Supp.2d at 214.

Not only is ISTA's position unsupported by the law, it makes no sense.  An assignee of a license agreement cannot pick and choose the obligations it wants to perform under the agreement by simply deeming some obligations "performance" and others "procedural."  What other so called "procedural" obligations of the License Agreement has ISTA refused to perform or will it not perform in the future?  For example, ISTA argues that it has the right to continue to use Senju's patent rights throughout the term of the License Agreement (without paying royalties because requiring payment is allegedly illegal under <u>Brulotte</u>) pursuant to §§ 23.01 and 23.02, which provide that if a provision of the agreement is held illegal or unenforceable, the remaining provisions remain in effect.  Matsumura Affidavit, Exhibit B at §§ 23.01 and 23.02.  Are these provisions "procedural"?  What about § 23.03, which requires the parties in good faith to re-negotiate illegal or unenforceable provisions to correct inequities?  Is this section procedural and the others not because ISTA so asserts.  ISTA

17

REPLY MEMORANDUM OF LAW

has already reserved the right to argue that it has not assumed the choice of law provision of the Agreement.  ISTA Brief, fn. 4.  Is the confidentiality provision procedural?  What about provisions for rights and obligations arising from infringements, and the indemnification, termination, and non-assignability provisions?  Under ISTA's theory, Senju, a non-party to the APA, is now left guessing as to what provisions and obligations of ISTA have allegedly been removed from its License Agreement because ISTA asserts that it assumed "performance and payment obligations" but did not assume alleged "procedural obligations."  This would be an absurd result.  Because ISTA assumed the **entire** Agreement and not just certain undisclosed obligations, it assumed the duty to arbitrate.

## II.
## ISTA ASSUMED THE ARBITRATION PROVISION BY ADOPTION IN THE FIRST AMENDMENT AS A "PARTY" TO THE AGREEMENT

Equally or more importantly, ISTA also assumed the License Agreement and the arbitration provision by **adoption** when it signed the First Amendment, which states that ISTA is a "party" to the Agreement.  The First Amendment provides in pertinent part:

> WHEREAS, AcSentient, Inc., a Delaware corporation ("AcSentient"), sold and assigned to ISTA **all of AcSentient's rights and certain of its obligations and liabilities** under the License Agreement by and between Senju and AcSentient, dated as of March 7, 2002 regarding bromfenac ophthalmic preparation (the "Agreement"), and **ISTA has therefore become a party** to the Agreement and Senju has elected to **continue the Agreement with ISTA**;

18

REPLY MEMORANDUM OF LAW

WHEREAS, SENJU and ISTA hereby desire to amend the provisions of the Agreement and desire **to confirm their respective obligations under the Agreement**:

NOW, THEREFORE, ISTA and Senju agree that:

1.  Capitalized wordings used in this Amendment shall have the meanings set forth in the Agreement.  **All references to AcSentient in the Agreement shall hereby refer to ISTA**.

5.      **Paragraph 16.06 shall be deleted in its entirety.**

6.      Article 20 of the Agreement shall be amended to read in its entirety; This License Agreement is personal to the parties hereto and shall not be assignable, transferable or saleable to any third Party by either party without the prior express written consent of the other Party, such consent not to be unreasonable withheld; provided, however that no such consent shall be required from Senju if ISTA is merged or acquired by a Third Party.

7.      **Unless stated herein, all other terms and conditions of the Agreement shall remain unchanged.**

9.      This Amendment, taken together with the Agreement, represent **the entire agreement** of the parties and **shall supersede** any and all previous contracts, arrangements or understandings between the parties with respect to the Agreement.  Anido Declaration, Exhibit C.

The First Amendment is a self-contained agreement signed by ISTA that states that ISTA became a "party" to the License Agreement.  In fact, paragraph 1 changes all references to AcSentient in the Agreement to ISTA, thus replacing by novation the prior party with a new party, ISTA.  Under the First Amendment, ISTA expressly confirms in paragraph 7 its obligations under the Agreement, and expressly agrees in paragraph 7 that

REPLY MEMORANDUM OF LAW

unless stated in the First Amendment, all other terms of the Agreement remain the same.[11]  Changes made to the Agreement in paragraphs 5 and 6 are to § 16.06 (Change of Control) and Article 20 (Non-Assignability), ironically, provisions on either side of § 17.02, the arbitration provision.  These sections, which are arguably procedural under ISTA's definition, were made in the First Amendment to the License Agreement, only a few months after the APA.  ISTA did <u>not</u> delete § 17.02, the arbitration provision, but carefully **deleted** § 16.06 and revised Article 20.  Finally, the First Amendment provides in paragraph 9 that the Amendment, with the License Agreement, represents the entire agreement between the parties.  The sum of these provisions is a ratification of the entire License Agreement, including the arbitration provision.  Thus, ISTA assumed the entire License Agreement by adoption.

ISTA argues that the reference in the first whereas clause of the First Amendment to the assignment of "all of AcSentient's rights and <u>certain</u> of its obligations and liabilities" ratifies its assumption of only performance obligations, and not the obligation to arbitrate.  ISTA Brief at 15.  The reference to "certain" in the whereas clause does no such thing.  It merely refers to the heading of § 5.01 of the APA, "Assignment of Certain Rights and Obligations under Agreements," and the fact that a payment obligation of the EVMS License was expressly disclaimed.  No exclusion or deletion of § 17.02 – the

---

[11]  This same provision appears in the Second Amendment in 2006 and Third Amendment in 2010.   The First Amendment substitutes a new party, ISTA, and all of the Amendments substitute new obligations and thus result in novations.

REPLY MEMORANDUM OF LAW

obligation to arbitrate – can be found anywhere in any agreement.   <u>See</u> Musante Affidavit, ¶¶ 5-6.  Because the First Amendment makes ISTA a party to the Agreement, and ratifies all of the obligations of Agreement, except for the changes made to § 16.06 and Article 20 (and as otherwise stated in the First Amendment), ISTA has adopted the License Agreement in its entirety and has thereby assumed the duty to arbitrate.

**III.**
**ISTA IS EQUITABLY ESTOPPED**
**FROM DISCLAIMING THE ARBITRATION PROVISION**

Under the principle of equitable estoppel, a party is precluded from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that the contract imposes. <u>See</u> <u>NORCAL Mutual Ins. Co. v. Newton</u>, 84 Cal.App.4[th] 64, 84 (2000)("No person can be permitted to adopt that part of an entire transaction which is beneficial to him/her, and then reject its burdens."); <u>Pullen v. Victory Woodwork, Inc.</u>, 2007 WL 1847633, *3 (E.D.Cal. June 27, 2007) ("When a non-signatory seeks to enforce provisions of a contract . . . equitable estoppel must prevents [sic] that entity from avoiding the obligations and burdens that also exist under the contract.").

Thus, a non-signatory cannot participate in the consummation and performance of an agreement, from which the non-signatory derived benefits, and later avoid the agreement's arbitration clause. <u>E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediaries</u>, 269 F.3d 187, 199 (3d Cir. 2001); <u>Legacy Wireless Serv., Inc. v. Human Capital, LLC</u>, 314 F.Supp.2d 1045, 1058 (D.Or. 2004). This rule applies even

21

REPLY MEMORANDUM OF LAW

where the non-signatory disclaims the duty to arbitrate.  <u>Ryan, Beck & Co., LLC v. Fakih</u>, 268 F.Supp.2d 210, 217 (E.D.N.Y. 2003).

In <u>Ryan</u>, plaintiff purchased substantially all of the assets of a broker dealer through an asset purchase agreement, including its customer accounts and related agreements, which contained arbitration provisions.  After the customers commenced an arbitration against plaintiff, plaintiff moved for a judgment declaring that it did not have a duty to arbitrate because it was not a signatory to the customer agreements.  <u>Id.</u> at 213.  The customers argued that since plaintiff purchased all of the assets of the broker dealer including the customer agreements, and had derived the benefits of those agreements, plaintiff was estopped from denying its duty to arbitrate.  <u>Id.</u> at 217.  Plaintiff argued that it had no duty to arbitrate because the asset acquisition agreement between it and the broker-dealer disclaimed the obligation to arbitrate.  <u>Id.</u>

The court held that the plaintiff was bound by the arbitration provision by equitable estoppel.  <u>Id.</u> at 220.  Plaintiff derived benefits from the client agreements and, notwithstanding its attempts to disclaim the duty to arbitrate, the court held plaintiff estopped from avoiding the duty to arbitrate.  <u>Id.</u> at 220; <u>see also</u> <u>World Group Securities, Inc. v. Allen</u>, 2007 WL 4168572 (D.Ariz. Nov. 20, 2007) (plaintiff who purchased assets, including contracts, was estopped from refusing to comply with arbitration provisions in contracts because plaintiffs received direct benefit under contracts); <u>International Paper Co. v. Schwabedissen Maschinen & Anlagen</u>, 206 F.3d 411, 418 (4th Cir. 2000) (same);

REPLY MEMORANDUM OF LAW

Am. Bureau of Shipping v. Tencara Shipyard S.P.A., 170 F.3d 349, 353 (2d Cir. 1999) (same); Legacy Wireless, 314 F.Supp.2d at 1045 (same); NORCAL, 84 Cal.App.4th at 81 (same).

Here, ISTA has marketed and sold Senju's licensed product Bromfenac since 2005, and has admittedly received the substantial financial benefits of the Agreement during that time.  Anido Declaration, ¶¶ 11-14.  In fact, ISTA continues to reap the financial benefits today, only without paying royalties to Senju, and asks this court to declare that it has the right to continue to receive benefits without paying royalties for the duration of the Agreement (notwithstanding the terms of § 23.03, which requires the parties to renegotiate terms to resolve any inequities).  ISTA cannot disclaim the arbitration provision after reaping the benefits of the Agreement for years, by simply arguing that it assumed only "certain liabilities" under the License Agreement.  Thus, ISTA should be equitably estopped from disclaiming its duty to arbitrate under the License Agreement. See Ryan, 268 F.Supp.2d at 217; see also World Group Securities, 2007 WL 4168572 at * 5.

## IV.
## ISTA'S ANTITRUST CLAIM SHOULD BE ARBITRATED

ISTA argues that that its antitrust claim should be decided by litigation before the Court and not arbitration before the ICC.  ISTA Brief at 24.  According to ISTA, it will be deprived of the opportunity to resolve its antitrust claims because the ICC arbitrators may apply Japanese law and not the "Brulotte rule and the Sherman Act."  Id. (citing

23

REPLY MEMORANDUM OF LAW

<u>Mitsubishi Motors Corp.  v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614 (1985) (in which the Supreme Court **directed** ICC arbitration)).  As set forth in Senju's initial brief, all issues concerning the scope of the arbitration provision should be decided by the arbitrator because the parties have agreed to have all issues decided by ICC arbitration, including issues of arbitrability.  Senju Brief, Point I.

If the Court were inclined to decide the issue, the Court of Appeals has held anti-trust claims are arbitrable.  <u>Simula, Inc. v. Autoliv, Inc.</u>, 175 F.3d 716 (9th Cir. 1999).  In <u>Simula</u>, the parties entered into a license agreement, which contained arbitration and choice of law provisions requiring ICC arbitration in Switzerland under Swiss law. Plaintiff sued defendant in Federal Court asserting that defendant's use of the license agreement violated the Sherman Act.  Defendant moved to dismiss or alternatively to stay the action pending arbitration.  Like ISTA here, plaintiff argued that its antitrust claims should not be arbitrated because the Swiss Arbitration Panel may apply Swiss law instead of U.S. antitrust law, which would deprive it of its remedies under the Sherman Act. <u>Simula</u>, 175 F.3d at 721.

Relying on <u>Mitsubishi</u> and the liberal policy favoring arbitration of international disputes, the Ninth Circuit affirmed the lower court's order compelling arbitration.  The court explained that resolution of the claims would require careful interpretation of the license agreement, which is a job for an arbitrator not the court.  The court also found that even if the Swiss arbitration panel applied Swiss law, which it might not, there had been

24

REPLY MEMORANDUM OF LAW

no showing that Swiss law would not provide plaintiff sufficient protection. Accordingly, the court required plaintiff "to honor its bargain" and arbitrate its antitrust claims. Id.

In this case, resolution of ISTA's antitrust claims requires interpretation of the License Agreement by the Arbitrators, a responsibility that Simula assigns to the ICC arbitrator. Moreover, like the plaintiff in Simula, ISTA offers no support for its assertion that Japanese law, if applied in an ICC arbitration, would not provide it sufficient antitrust remedies. Thus, the Court should stay this action and ISTA should be required to honor its bargain to arbitrate. Id.

## CONCLUSION

For the foregoing reasons, Senju requests that this Court grant its Motion.

Dated:  August 9, 2010          CARTER LEDYARD & MILBURN LLP


By:    /s/
William F. Sondericker
Keith D. Nowak
2 Wall Street
New York, New York 10005
Telephone:  (212) 732-3200
Facsimile:  (212) 732-3232

GREENBERG, WHITCOMBE & TAKEUCHI, LLP
Derrick K. Takeuchi
21515 Hawthorne Boulevard, Suite 450
Torrance, California 90503
Telephone:  (310) 540-2000
Facsimile:  (310) 540-6609

Attorneys for Defendant
Senju Pharmaceutical Co., Ltd.

25

REPLY MEMORANDUM OF LAW